IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-00417-RN

**Edward Joseph Richard, Jr.,**

    Plaintiff,

v.

**Nancy A. Berryhill**, Acting
Commissioner of Social Security,[1]

    Defendant.

**Memorandum & Order**

  Plaintiff Edward Joseph Richard, Jr. instituted this action on December 21, 2016, to challenge the denial of his application for social security income. Richard claims that Administrative Law Judge ("ALJ") Richard L. Vogel erred in (1) failing to obtain testimony from a Vocational Expert ("VE"), (2) failing to resolve conflicts between Richard's past work and the Dictionary of Occupational titles ("DOT"), and (3) failing to apply the correct Medical-Vocational Guidelines ("Grid Rule"). Both Richard and Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 19, 22.

  After reviewing the parties' arguments, the court has determined that ALJ Vogel reached the appropriate decision. The testimony of a VE was not required because ALJ Vogel resolved the disability determination at step four of the sequential analysis. Additionally, the court cannot conclude that ALJ Vogel erred in classifying Richard's past work or his identification of the

---

[1] Berryhill replaced Carolyn Colvin as the Acting Commissioner of Social Security on January 20, 2017.

applicable DOT code. Moreover, although the Grids do not direct ALJ Vogel's disability determination in this instance, ALJ Vogel nonetheless referenced the Grid Rule applicable based on Richard's age, education, and vocational factors. Therefore, the court denies Richard's motion, grants Berryhill's motion, and affirms the Commissioner's decision.[2]

I. Background

On June 15, 2013, Richard protectively filed an application for disability benefits alleging a disability that began on June 15, 2010. After his claim was denied at the initial level and upon reconsideration, Richard appeared before ALJ Vogel for a hearing to determine whether he was entitled to benefits. ALJ Vogel determined Richard was not entitled to benefits because he was not disabled. Tr. at 15–22.

ALJ Vogel found that Richard had the following severe impairments: obesity and arthritis/degenerative disc disease. *Id.* at 17. ALJ Vogel found that Richard's impairments, either alone or in combination, did not meet or equal a Listing impairment. *Id.* at 18. ALJ Vogel then determined that Richard had the RFC to perform a full range of light work. *Id.* ALJ Vogel concluded that Richard was capable of performing his past relevant work as an electrical trades instructor. *Id.* at 21. Thus, ALJ Vogel found that Richard was not disabled. *Id.* at 22

After unsuccessfully seeking review by the Appeals Council, Richard commenced this action on December 21, 2016. D.E. 1.

II. Analysis

  A.   **Standard for Review of the Acting Commissioner's Final Decision**

---

[2] The parties have consented to jurisdiction by a United States Magistrate Judge. 28 U.S.C. § 636(c). 28 U.S.C. § 636(b). D.E. 15.

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively* v. *Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith* v. *Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

B.   **Standard for Evaluating Disability**

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson* v. *Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The

burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Background

Richard has a history of orthopedic issues. In May 2013, following x-rays, Dr. Robert O'Malley, a podiatrist, diagnosed him with plantar fasciitis in his left foot, third interspace neuroma in his right foot, and bilateral calcaneal bone spurs. Tr. at 288.

In June 2013, Richard reported to Dr. Gregory Schimizzi that medication provided him with significant relief from his arthritis symptoms. Tr. at 292. An examination noted generally normal findings. *Id.* Richard also reported that he had begun an exercise program which improved how he felt. *Id.*

The following month, state agency consultant April L. Strobel-Nuss, Psy.D., performed a review and concluded that Richard did not have a severe mental impairment. *Id.* at 54.

Later that month, Richard sought treatment at OrthoWilmington for his back pain. *Id.* at 374. He stated that he did water aerobics, which he tolerated well, and that he was pain free when he took his medications. *Id.* An examination found intact sensation, no edema, and good strength in his lower extremities with a decreased lumbar range of motion. *Id.* at 375. Providers prescribed medications. *Id.* A nerve conduction study performed the following month was normal, showing no neuropathy or radiculopathy. *Id.* at 376–77.

In January 2014, Richard returned to OrthoWilmington for back pain which he rated as a six on a scale of one to ten. *Id.* at 368. Richard noted that pain medication relieved his symptoms and that he experienced no side effects. *Id.* At a follow-up visit two months later, Richard had full

range of motion in his lower extremities with his lumbar flexation limited to 45 degrees. *Id.* at 366–37. The examination also disclosed no spasm, muscle pain, or trigger points from L1 to S1, full strength in the flexors and extensors of his hips, knees, and ankles, and no weakness with lumbar flexation and extension, rotation, or tilt. *Id.* Records again noted that he took pain medication without any reported side effects. *Id.*

At this time, an MRI of Richard's lumbar spine showed a mild disc bulge at L4-5 with a left foraminal component mildly impressing on the left L4 nerve root, a small left foraminal and lateral disc herniation at L2-3 with no mass effect on the left L2 nerve root, and minimal disc bulges at L1-2 and L3-4 without stenosis. *Id.* at 367, 383. An epidural steroid injection provided limited relief of his pain symptoms. *Id.* at 474.

During this same time, Richard sought treatment at Trinity Wellness Center for anxiety and depression. *Id.* at 357. A mental status examination showed that he was alert and oriented with normal insight and judgment, appropriate affect, and euthymic mood. *Id.* at 360. Providers diagnosed post-traumatic stress disorder and bipolar II, for which they started Richard on a medication regimen. *Id.* Although he continued to feel anxious and depressed, two weeks later Richard stated that he was doing well with the new medication. *Id.*

Richard returned to Trinity Wellness Center the following month for an evaluation. *Id.* at 398. He reported that he felt better with medication and was looking forward to exercising again. *Id.* He had good concentration and an intact memory. *Id.* Richard indicated that he enjoyed himself during the day and engaged in social activities. *Id.*

Later that month, Richard complained of lower back pain while riding a bike. *Id.* at 386. He stated that a recent injection provided him little relief. *Id.* Dr. Schimizzi's examination found no motor or sensory deficits, negative straight leg raises, and normal deep tendon reflexes in the

lower extremities. *Id.* at 387. In May 2014, an examination showed good range of motion in the cervical spine with some lumbar spine discomfort on extension, normal gait, and negative straight leg raises. *Id.* at 515. Richard also denied experiencing any depression or anxiety. *Id.*

State agency psychological consultant Betty B. Aldridge, Psy.D., performed a review and concluded that Richard had no restrictions in activities of daily living, mild difficulties in social functioning and in maintaining concentration, persistence, or pace, and no episodes of decompensation. *Id.* at 66. She also found that he did not have a severe mental impairment. *Id.* at 67. State agency medical consultant Dr. Steven Levin conducted a review at the same time and found that Richard could perform the exertional demands associated with light work with a limitation to frequent kneeling, climbing, and crawling and occasional stooping and crouching. *Id.* at 68–69.

When Richard returned to Trinity Wellness Center in May 2014, he denied any anxious or depressive symptoms and reported that the medication helped "a lot." *Id.* at 396. Later that month, Richard reported that his wife noticed he was less depressed and although he had feelings of anxiety and depression, he reported that he was "doing well." *Id.* Records note he had good concentration, intact memory, and good social activity. *Id.*

In November 2014, Richard returned to OrthoWilmington complaining that his back pain was worsening. *Id.* at 527. An examination showed numbness at the left L5 area. *Id.* at 530. The next month, an MRI of the lumbar spine revealed mild degenerative changes, including left posterolateral focal disc protrusion at L4-5 with possible impingement of the extraforaminal left L4 nerve root, and a tiny left posterior lateral disc protrusion at L2-3 nearly abutting the extraforaminal left L2 nerve root. *Id.* at 485–86.

A March 2015 examination found no motor or sensory deficits and negative straight leg raises. *Id.* at 537. Later that month and the following month, Richard reported "doing well" with an improved and stable mood and well-controlled anxiety. *Id.* at 630–31. He denied anxious or depressive symptoms. *Id.* at 630. An examination the following month showed normal muscle tone and bulk; normal or near-normal strength; and non-tender, non-painful spinous processes and paraspinals. *Id.* at 693. No surgical intervention was recommended and Richard wanted to pursue conservative treatment with pain management. *Id.* at 694.

In May 2015, providers recommended that Richard use a TENS unit at home, continue on his medication regimen, and pursue physical therapy to strengthen his core lumbar musculature. *Id.* at 699. They advised Richard to avoid repetitive lumbar flexion and heavy lifting. *Id.*

Records from Trinity Wellness Center in June 2015 indicate that Richard was "doing well" with a good mood and that he reduced his anxiety with various behavioral techniques. *Id.* at 627. Three months later, Richard reported some sleep difficulties, but stated he was doing "pretty well" and feeling "pretty good" overall. *Id.* at 702.

At the hearing, Richard testified that he could stand and walk for 10–15 minutes and could sit for 15–20 minutes. *Id.* at 44, 46. He stated he needed to change positions frequently and lie down several times per day. *Id.* at 44–46. Richard also testified that his narcotic pain medication impaired his ability to focus. *Id.* at 44–45.

### D. Dictionary of Occupational Titles

Richard asserts that ALJ Vogel erred at step four by classifying his past relevant work as an electrical trade instructor with DOT code 166.221-010. Tr. at 21–22. The Commissioner contends, and the court agrees, that Richard has failed to establish error in the categorization of his past work.

### 1. Past Relevant Work Framework

A claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. "Past relevant work" is defined by the Regulations as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1); *see also* 20 C.F.R. § 404.1574 (discussing substantial gainful activity). In determining whether a claimant can perform his past relevant work, the Commissioner "will ask [the claimant] for information about work you have done in the past" and "may also ask other people who know about your work" and "may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor, to obtain evidence [she] need[s] to help [her] determine whether [a claimant] can do [her] past relevant work, given [her] residual functional capacity." 20 C.F.R. § 404.1560(b)(2). A claimant is generally not disabled if he can return to her past relevant work as he performed it or as it is customarily performed throughout the economy. 20 C.F.R. § 404.1560(b)(2); SSR 82-61, 1982 WL 31387.

Courts in this circuit have recognized that when a plaintiff's past relevant work does not properly fall within a DOT classification, either because the plaintiff performed a so-called "composite" job with duties crossing over various DOT classifications or because she did not perform the main duties of the DOT-classified job identified by the vocational expert, then the ALJ should not consider whether a plaintiff can perform her past relevant work as it is generally performed in the national economy based on a DOT classification. In such cases, some courts have suggested that an ALJ is limited to determining whether the claimant can perform her past relevant work as she performed it. *See, e.g., Shealy* v. *Colvin*, No. 8:13-2383-RMG, 2015 WL 467726, at

*11–13 (D.S.C. Feb. 4, 2015) (discussing "composite jobs" and concluding that substantial evidence did not support the ALJ's finding that the plaintiff could return to work as an "order clerk" where her past relevant work actually appeared to be a composite job requiring the duties of order clerk, material handler, and/or store laborer).

## 2. Richard's Previous Work

Richard contends that the DOT code 166.221-010, identified as representative of his past work, is inaccurate and that his actual job duties are not reflected in the DOT position of electrical trade instructor. He argues that the DOT contains no code that accurately illustrates his past work and, instead, his position was a "composite job" of several different positions.

The DOT discusses the "Instructor, Technical Training" position to include the following duties:

> Writes training program, including outline, text, handouts, and tests, and designs laboratory exercises, applying knowledge of electronics, mechanics, hydraulics, pneumatics, and programming, and following machine, equipment, and tooling manuals. Schedules classes based on classroom and equipment availability. Lectures class on safety, installation, programming, maintenance, and repair of machinery and equipment, following outline, handouts, and texts, and using visual aids, such as graphs, charts, videotape, and slides. Demonstrates procedures being taught, such as programming and repair, applying knowledge of electrical wire color coding, programming, electronics, mechanics, hydraulics, and pneumatics, using handtools, measuring instruments, and testing equipment, and following course outline. Observes trainees in laboratory and answers trainees' questions. Administers written and practical exams and writes performance reports to evaluate trainees' performance.

DOT 166.221-010. This position is relevant to teaching and vocational training. *Id.*

In his Disability Report, Richard described his past work as follows: "I taught students to become skilled electrical journeymen." At the hearing, he testified about his previous work:

> I would teach kids and we would—we would build walls and then we would wire— put in power supplies or load centers and we would run wires to the boxes and then they brought—they would wire up the receptacles, the switches, and the lights. You

> could have to get on ladders and do these different things. We did all kinds of hands-on activities. We threaded pipe[.]

Tr. at 40. He also described his duties to include bending down to look at students' work and grading papers. *Id.* at 41–42.

The evidence reflects that Richard's work includes the duties described in the DOT code for electrical trade instructor. The evidence would suggest, for example, that Richard designed laboratory exercises applying electronics knowledge, demonstrated procedures being taught, and evaluated students' performance. This indicates that the electrical trade instructor position as described in the DOT encompasses some of the main functions of Richard's past work, even though some of his duties may have been different or performed at a greater exertional level.

Because the description of Richard's past work falls into the DOT description of electrical trade instructor, ALJ Vogel did not err in classifying it under that DOT code or in declining to categorize his past work as a "composite job."

### 3. Electrical Trade Instructor as Generally Performed

Social Security Ruling 82-61 states that a claimant will be found "not disabled" when it is determined that he or she retains the RFC to perform:

1. The actual functional demands and job duties of a particular past relevant job; or

2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

1982 WL 31387, at *4.

Richard argues that ALJ Vogel erred in classifying his past job as an electrical trade instructor, which the DOT categorizes as light work, because he performed the job at a greater exertional level. His Disability Report states that he would lift 100 pounds or more with frequent

10

lifting of 50 pounds or more. Tr. at 205. The lifting he describes as associated with his past work as he actually performed it would correspond with heavy work.

However, ALJ Vogel concluded that Richard was capable of performing his past relevant work as it is generally performed. *Id.* at 22. Coupled with the RFC determination and the DOT description of the duties of the electrical trade instructor job, this satisfied his step four obligations. Moreover, even though the burden rests with Richard at step four, he has not identified the DOT job classification(s) for his previous work that he believes more appropriately reflect(s) that position.[3] For these reasons, his argument on this issue lacks merit.

### E. Vocational Expert Testimony

Richard next maintains that ALJ Vogel erred in failing to seek testimony from a VE. The Commissioner argues that the testimony of a VE was not required. The court concludes that ALJ Vogel did not err in declining to secure the testimony of a VE.

The Regulations provide that in determining whether a claimant can perform past relevant work, the ALJ *may* consult a VE or other resources such as the DOT. 20 C.F.R. § 404.1560(b)(2) (emphasis added); *see Banks* v. *Massanari*, 258 F.3d 820, 827 (8th Cir. 2001) (concluding that "vocational expert testimony is not required at step four where the claimant retains the burden of proving she cannot perform her prior work" and "is not required until step five when the burden shifts to the Commissioner, and then only when the claimant has nonexertional impairments.... ") (citations omitted); *Aurand* v. *Astrue*, No. 6:07-3968-HMH-WMC, 2009 WL 364389, at *5 (D.S.C. Feb. 12, 2009) (explaining that at step four if the ALJ determines a claimant suffers from significant nonexertional limitations, the ALJ should consider whether the testimony of a VE

---

[3] The Commissioner identifies two other electronics/vocational teaching positions—Teacher, Vocational Training (DOT No. 094.224.-026) and Instructor, Vocational Training (DOT No. 097.221-010) that may also involve the type of work Richard performed. She points out that both of these positions are similarly categorized as light exertional level.

11

would be helpful in determining whether the claimant can perform past relevant work, but at step five the ALJ must obtain the testimony of the VE as to the impact of nonexertional limitations). The Fourth Circuit has also explained that "[a]lthough specific reference to individual job demands is required to determine whether the claimant can return to his actual past job, when the ALJ analyzes past relevant work as it is performed in the national economy, she is entitled to rely on the exertional categories found in the DOT." *Kirkendoll* v. *Apfel*, 162 F.3d 1155, 1998 WL 539481, at *1–2 (4th Cir. Aug. 25, 1998) (Table) (emphasis added) (citing *DeLoatche* v. *Heckler*, 715 F.2d 148, 151 (4th Cir. 1983)). In *Kirkendoll*, the Fourth Circuit rejected the argument that the ALJ erred in failing to solicit testimony from a VE where the claimant had both exertional and nonexertional impairments, because the ALJ properly ended the inquiry at step four and did not proceed to step five. *Id.* at *2.

Because ALJ Vogel determined that Richard could perform his past relevant work as it is generally performed, ending the inquiry at step four, VE testimony was not required. Richard cites no conflict between the RFC, as determined by ALJ Vogel, and his past relevant work, identified by ALJ Vogel as an electrical trade instructor, as it is performed in the national economy and described in the DOT. *See* DOT 166.221-010. Additionally, a review of the DOT description of this work reveals no such conflict. *Id.* Accordingly, ALJ Vogel did not err at step four in failing to consult a VE.

Inasmuch as the disability determination concluded at step four, ALJ Vogel was not required to proceed to step five by identifying other work that Richard could perform, with or without the assistance of a VE. Richard argues, however, that a step five determination, with VE testimony, was necessary to address his nonexertional limitations. However, the RFC determination reflects no such limitations, nor did ALJ Vogel credit Richard's statements of such

restrictions. ALJ Vogel noted that although he reported some issues with depression and anxiety related to his pain, these conditions were not severe impairments and caused no more than a minimal effect on his abilities to perform work-related activities. Tr. at 17. He further concluded that Richard had only mild limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace. *Id.* Given the absence of evidence supporting a finding that Richard had nonexertional limitations, testimony from a VE at step five would not have been required.

Because ALJ Vogel's step four was proper, he was not required to continue the disability examination at step five. Moreover, based on his findings, VE testimony was not required had the analysis proceeded to step five. Consequently, the court rejects Richard's argument on this issue.

### F.  Medical-Vocational Guidelines

Richard's final argument is that ALJ Vogel applied the incorrect Grid Rule and that utilization of the correct Grid Rule, 202.06, would direct a finding of disabled. He premises this argument on the contention that his RFC for light work prevents him from returning to his past work as it was actually performed. The Commissioner asserts that Richard's position lacks merit not only because the disability determination was made at step four, and thus a finding at step five was not required, but also because the nonexertional limitations upon which he relies were not credited. Based on the discussion above, the court agrees with the Commissioner's position.

As noted above, while a claimant has the burden at steps one through four, it is the Commissioner's burden at step five to show that work the claimant is capable of performing is available. *Pass*, 65 F.3d at 1203 (citing *Hunter* v. *Sullivan*, 993 F.2d 21, 35 (4th Cir. 1992)). "The Commissioner may meet this burden by relying on the Medical-Vocational Guidelines (Grids) or by calling a vocational expert [("VE")] to testify." *Aistrop* v. *Barnhart*, 36 F. App'x 145, 146 (4th

Cir. 2002) (citing 20 C.F.R. § 404.1566)). The Grids are published tables that take administrative notice of the number of unskilled jobs at each exertional level in the national economy. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a).

When a claimant suffers solely from exertional impairments, the Grids may satisfy the Commissioner's burden of coming forward with evidence as to the availability of jobs the claimant can perform. *Grant* v. *Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). When a claimant (1) suffers from a non-exertional impairment that restricts his ability to perform work of which he is exertionally capable, or (2) suffers an exertional impairment which restricts him from performing the full range of activity covered by a work category, the ALJ may not rely on the Grids and must produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant. *See Walker* v. *Bowen*, 889 F.2d 47, 49 (4th Cir. 1989); *Hammond* v. *Heckler*, 765 F.2d 424, 425–26 (4th Cir. 1985); *Cook* v. *Chater*, 901 F. Supp. 971 (D. Md. 1995); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h).

As noted above, the disability determination concluded at step four when ALJ Vogel determined that Richard's past relevant work was not incompatible with his RFC. Accordingly, he did not proceed to examine other work Richard was capable of performing by looking to the Grids or consulting a VE. For this reason, Richard's argument that ALJ Vogel employed an incorrect Grid Rule is flawed.

Richard's argument also lacks merit because his RFC determination contained no nonexertional impairments. Although Richard testified to limitations from his pain, ALJ Vogel notes his allegations were not fully credible.

Finally, Richard contends he is incapable of performing his past work because the side effects of his medication render it unsafe to perform the tasks associated with this position. He

14

further alleges that the landscape of education has changed since he was first hired over 35 years ago and he would not be hired for such a position given his lack of a degree or certification post-secondary school.

The Commissioner points out, however, that the likelihood of employment based on Richard's specific profile is not a relevant factor to the disability inquiry where an ALJ determines that a claimant's RFC and vocational abilities make it possible for him to do his past work. The Regulations address an inability to obtain employment under 20 C.F.R. § 404.1566(c), which provides:

> We will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy, but you remain unemployed because of—
>
> (1) Your inability to get work;
>
> (2) Lack of work in your local area;
>
> (3) The hiring practices of employers;
>
> (4) Technological changes in the industry in which you have worked;
>
> (5) Cyclical economic conditions;
>
> (6) No job openings for you;
>
> (7) You would not actually be hired to do work you could otherwise do; or
>
> (8) You do not wish to do a particular type of work.

20 C.F.R. § 404.1566(c); *see also Olson* v. *Schweiker*, 663 F.2d 593 (5th Cir. 1981) (disability inquiry is not whether claimant is able to obtain work but whether he is able to engage in any vocation); *Cook on Behalf of Cook* v. *Sullivan*, 812 F. Supp. 893 (C.D. Ill. 1993) (economic conditions, personal factors, and attitudes of employers are irrelevant in determining whether claimant is disabled).

Thus, whether a particular employer or any employer would hire Richard is not germane to ALJ Vogel's disability determination. Moreover, the record reflects that Richard denied side effects from his medication. Tr. at 20. Although he testified that the medication interfered with his ability to concentrate, *id.* at 33, such a limitation was found not credible by ALJ Vogel and thus excluded from the RFC determination. *Id.* at 18, 21. Accordingly, Richard's argument on this issue lacks merit and should be rejected.

### III. Conclusion

For the forgoing reasons, the court denies Richard's Motion for Judgment on the Pleadings (D.E. 19), grants Berryhill's Motion for Judgment on the Pleadings (D.E. 22), and affirms the Commissioner's determination. This action is dismissed. The Clerk shall close this case.

Dated: December 18, 2017

_____
Robert T. Numbers, II
United States Magistrate Judge